Ronald Abramson
David G. Liston
**LEWIS BAACH pllc**
The Chrysler Building
405 Lexington Avenue
New York, NY 10174
Tel: (212) 826-7001

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| WAG ACQUISITION, L.L.C., | |
| Plaintiff, | Civil Action No.: |
| v. | |
| DATA CONVERSIONS, INC., f/k/a A.E.B.N., Inc., d/b/a Adult Entertainment Broadcast Network, AEBN, and pornotube.com; | **COMPLAINT FOR PATENT INFRINGEMENT** |
| WMM, LLC, d/b/a pornotube.com and AEBN, LLC; | and |
| WMM HOLDINGS, LLC; and | **DEMAND FOR JURY TRIAL** |
| DOES 1-20, | |
| Defendants. | |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff WAG ACQUISITION, L.L.C., for its complaint against Defendants, alleges infringement of United States Patent Nos. 8,122,141 and 8,327,011 (the "patents-in-suit"). Plaintiff alleges that Defendants directly and indirectly infringe

the patents-in-suit by conduct including without limitation their Internet delivery of adult video on demand programming, as more particularly specified herein.

## THE PARTIES

1. Plaintiff WAG Acquisition, L.L.C. is a New Jersey limited liability company with its principal place of business at 3 Gold Mine Road, Suite 104, Flanders, New Jersey 07836.

2. On information and belief, Defendant DATA CONVERSIONS, INC. is a corporation organized under the laws of the State of South Carolina, with a registered agent at 5751 Augusta Road, Greenville, South Carolina 29605, and places of business at 5300 Old Pineville Road, Charlotte, North Carolina 28217, and 500 Archdale Road, Charlotte, North Carolina 28217.  On information and belief, Defendant DATA CONVERSIONS, INC. was formerly known as A.E.B.N., Inc.  On information and belief, Defendant DATA CONVERSIONS, INC. is doing business under a number of trade names, including without limitation AEBN, Adult Entertainment Broadcast Network, and pornotube.com.  Defendant DATA CONVERSIONS, INC. is hereinafter referred to as "AEBN").

3. On information and belief, Defendant WMM, LLC is a Nevada limited liability company with a registered agent at 311 S. Division Street, Carson City, Nevada 89703 and a place of business at 500 Archdale Drive, Charlotte, North Carolina 28217.  Upon information and belief, WMM, LLC also does business as pornotube.com and under the name AEBN, L.L.C.  Upon information and belief, WMM, LLC is, or was, carrying out or aiding and abetting in the activities and/or causing the injuries and damages complained of herein.

4. On information and belief, Defendant WMM HOLDINGS, LLC is a Nevada limited liability company with a registered agent at 311 S. Division Street, Carson City, Nevada 89703 and a place of business at 500 Archdale Drive, Charlotte, North Carolina 28217. On information and belief, WMM HILDINGS, LLC receives or processes payments for Defendants and is, or was, otherwise carrying out or aiding and abetting in the activities and/or causing the injuries and damages complained of herein.

5. On information and belief, Defendants DOE 1 – DOE 20 are entities whose precise identities are unknown to Plaintiff at this time, which operate in concert with Defendants AEBN, WMM, LLC, and/or WMM HOLDINGS, LLC in connection with the conduct complained of herein.

## JURISDICTION AND VENUE

6. The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the patent laws of the United States, 35 U.S.C. §§ 1 et seq.

7. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b)-(c) and 1400(b).

## PLAINTIFF'S BUSINESS AND DEVELOPMENTS

8. Plaintiff, operating under the trade name SurferNETWORK, is in the business of providing Internet broadcasting services for live and on-demand audio and video program material. Plaintiff began this business in 1998, and has been one

of the leading providers of such services to the terrestrial radio stations and other content providers that comprise its customer base.

9. Early in developing its business, two of Plaintiff's principals, William A. Grywalski, ("Grywalski") and Harry Emerson ("Emerson"), recognized a need that existed in the field of Internet delivery of broadcast media due to the shortcomings in then current Internet streaming technologies. They observed that long startup delays due to "buffering" and frequent program interruptions (sometimes referred to as "jitter") made the experience of trying to listen to or view streaming Internet content frustrating to the end user, and therefore impractical as a content delivery mechanism. They were interested in making the Internet streaming experience more like radio or television, including the immediacy of having the programming appear to start instantly on demand (e.g., turning on a radio or flipping channels), and continue playing once started without random interruptions.

10. Plaintiff engaged the assistance of a software design engineer, Harold Price ("Price"), to develop solutions for the shortcomings that Grywalski and Emerson saw in the current technology, with respect to streaming media playback performance, as well as other technological issues concerning Internet delivery of broadcast media. Price worked on several aspects of this matter for Plaintiff over the period 1999-2001.

11. Price was aware of the then current approach to streaming, which attempted to overcome streaming transmission delays and jitter by a variety of techniques, including, for example, establishing a content buffer of 20 seconds or so in duration on the receiving (user or "client") end of the communication, within the

client's media player or media player browser plugin.  After the user selected (e.g., clicked on) a stream, the player would start filling this buffer at the playback rate and then start playing when the buffer was full.  While this method did provide some protection against interruptions for the duration of whatever content was initially buffered, it entailed an undesirable startup delay for "buffering," and provided no means for graceful recovery once the 20 seconds worth of content in the buffer was consumed.

  12.  Price conceived of solutions to these problems.  He built a prototype that implemented one embodiment of those solutions, and he demonstrated that a system according to his new design could overcome the problems put to him by Grywalski and Emerson.

  13.  Plaintiff and its predecessors in interest filed a number of U.S. patent applications on these solutions, as enumerated below.  To date, this family of patent applications has resulted in seven issued U.S. patents, including the two patents-in-suit.  All of these patent applications were assigned to Plaintiff, or to a predecessor-in-interest of Plaintiff and reassigned to Plaintiff.

  14.  Plaintiff has been conducting an active, operating business ever since the developments described above, and has actively practiced under the technology taught in the patents-in-suit, from then to the present.   Plaintiff has developed commercial arrangements under which it streams content for numerous terrestrial radio stations and content providers in New Jersey, regionally, nationally, and internationally.  It also provides a One-Click Royalty Reporter™ for radio stations to report streaming media performance royalty information to SoundExchange (a

performing rights organization that collects royalties on the behalf of sound recording copyright owners ), among other services.

15.  Despite its successes, Plaintiff's business has been damaged by infringement such as that practiced by the Defendants.

## THE PATENTS-IN-SUIT

16. United States Patent No. 8,122,141 (the '141 patent") was duly and legally issued on February 21, 2012 for an invention entitled "STREAMING MEDIA BUFFERING SYSTEM."  Plaintiff is the owner by assignment of the '141 patent and owns all rights to recover for past and ongoing infringement thereof.

17. United States Patent No. 8,327,011 (the '011 patent") was duly and legally issued on December 4, 2012 for an invention entitled "STREAMING MEDIA BUFFERING SYSTEM."  Plaintiff is the owner by assignment of the '011 patent and owns all rights to recover for past and ongoing infringement thereof.

## DEFENDANTS' ACTIVITIES

18.  Defendants are in the business of providing streaming media, including without limitation adult-oriented video on demand ("VOD") programming, and other adult and streaming media content, over the Internet.  On information and belief, the Defendants named herein operate individually and in concert with one another to conduct this business.

19.  Defendants distribute and transmit this content from server facilities under their control, to Internet users around the world, on diverse systems, including without limitation desktop computers, as well as smartphones and tablets

running under various operating systems and environments, including without limitation, as the case may be, Apple® iOS and Android™ mobile operating systems, the Windows®, and OS X® desktop operating systems, and Safari®, Chrome™, Firefox®, Opera™, Internet Explorer®, and other Internet browsers.

20. Defendants provide interactive facilities for users to purchase access to their online programming by credit card payment, and also provide interactive links to live video feeds of adult web cam performances. Defendants aggressively market these services to a worldwide audience, including, on information and belief, a substantial volume of users in this District, from which defendants derive substantial revenues. On information and belief, Defendants regularly make business visits to New Jersey and sponsor events in New Jersey to promote their online services to New Jersey residents and others.

21. Adult streaming media is an extremely high volume business, which is well known as consuming a high percentage of the total bandwidth available on the Internet. Operating in this market requires sophisticated technology and complex infrastructure.

22. While the operational demands of the adult streaming business entail high infrastructure cost, the market for Defendants' services is also very large, making the business extremely lucrative.

23. Success in Defendants' business is highly dependent on fast, smooth, uninterrupted delivery of streaming media content, such as that made possible by Plaintiff's patents. Defendants derive great value as a result of operating under Plaintiff's patented technology, for which they have not compensated Plaintiff.

24. Defendants transmit their streaming media content over a variety of delivery technologies to, inter alia, desktop computers and mobile devices, including without limitation smartphones and tablets as described above, in a manner that infringes Plaintiff's patents.

25. On information and belief, defendants DOE 1– DOE 20 ("Doe Defendants") include persons and entities that materially aid and assist in carrying out the infringing acts alleged herein. The Doe Defendants including without limitation are operators of "affiliated" web sites that are cosmetically modified versions of Defendants' sites, carrying the branding of such Doe Defendants'. On information and belief, the Doe Defendants have revenue split deals with the other Defendants named herein, under which they take a substantial share in revenues derived from infringing Plaintiff's patents.

26. Defendants have infringed and are continuing to infringe Plaintiff's patents, including at least the patents-in-suit.

**COUNT I: INFRINGEMENT OF THE '141 PATENT**

27. Plaintiff repeats and realleges the allegations of paragraphs 1-26 above as if fully set forth at length herein.

28. Defendants have and continue to directly and indirectly infringe at least claims 1-7, 9, 10-16, 18-20, and 22-28 of the '141 patent by providing streaming performances over the Internet through their manufacture, distribution, use, sale, importation, and/or offer for sale of systems, methods, products, and processes for:

- creating or storing on their servers streaming media from a disk file (or from a live source) in a form comprising a plurality of sequential media data elements, which are identified by serial identifiers,

- programming the servers to receive requests from user systems for media data elements corresponding to serial identifiers specified in the requests,

- programming the servers to send the media data elements responsive to the user requests, with the result that the streaming media contained in the media data elements are sent to the user at a rate more rapid than its playback rate,

- with knowledge of the '141 patent at least since Plaintiff's notice thereof to Defendants (as recited in Par. 34), inducing the user to use media player software for receiving streaming media from Defendants' specially programmed servers, and for playing the streaming media so received, wherein the media player software maintains a record of the identifier of the last data element that has been received, and transmits to the server requests to send one or more data elements, specifying the identifier of the data elements, as required by the media player software to maintain a sufficient number of media data elements in the media player software for uninterrupted playback.

Defendants are liable for their infringement of the '141 patent pursuant to 35 U.S.C. §§ 271(a)-(c).

29. Defendants' acts of infringement have caused and are continuing to cause damage to Plaintiff, and Plaintiff is entitled to recover from Defendants the damages sustained by Plaintiff as a result of Defendants' infringing acts in an amount subject to proof at trial.

30. Defendants' widespread infringement has injured Plaintiff's ability to expand its operations based on its patented technology.  Plaintiff's remedy in damages for such continuing infringing activity is inadequate to fully compensate

Plaintiff for the invasion of its exclusive rights, and Plaintiff is entitled to an injunction to protect its business against such continuing infringement.

## COUNT II: INFRINGEMENT OF THE '011 PATENT

31. Plaintiff repeats and realleges the allegations of paragraphs 1-30 above as if fully set forth at length herein.

32. Defendants have and are continuing to contributorily infringe and induce infringement of claims 1-4 the '011 patent by their manufacture, distribution, use, sale, and/or offer for sale of software components, systems, and services specially adapted to be used in conjunction with browsers and/or media players that infringe the '011 patent, wherein the browsers and/or media players:

- request from Defendants' servers a predetermined number of media data elements, requesting the elements by serial identifier,
- receive media data elements sent to by Defendants' servers responsive to said requests,
- implement a buffer manager to store media data elements received from Defendants' servers and maintain a record of the serial number of the last media data element received,
- play the media data elements sequentially from the buffer,
- repeat such requests so as to maintain a pre-determined number of media data elements in the buffer.

Defendants' said server components, systems, and services are specifically adapted to work with, and require, browsers and/or media players configured in an infringing manner as aforesaid, in order for Defendants' steaming media delivery to operate. Defendants, having knowledge of the '011 patent at least since Plaintiffs' notice thereof to defendants (as recited in Par. 34), thereby induce the users of said

browsers and/or media players to infringe the '011 patent, and contribute to such infringement. Defendants are liable for their infringement of the '011 patent pursuant to 35 U.S.C. §§ 271(b)-(c).

33. Defendants' acts of infringement have caused and are continuing to cause damage to Plaintiff, and Plaintiff is entitled to recover from Defendants the damages sustained by Plaintiff as a result of Defendants' infringing acts in an amount subject to proof at trial.

34. Defendants' widespread infringement has injured Plaintiff's ability to expand its operations based on its patented technology. Plaintiff's remedy in damages for such continuing infringing activity is inadequate to fully compensate Plaintiff for the invasion of its exclusive rights, and Plaintiff is entitled to an injunction to protect its business against such continuing infringement.

## COUNT III: WILLFUL INFRINGEMENT

35. Plaintiff repeats and realleges the allegations of paragraphs 1-34 above as if fully set forth at length herein.

36. The filing of this action for infringement constitutes notice to Defendants of such infringement, pursuant to 35 U.S.C. § 287. Defendants were also simultaneously notified of their infringement by letters sent to their business addresses. At least upon receipt of such notices Defendants should have understood that there was an objectively high likelihood that their actions thereafter constituted, and were inducing and contributing to, patent infringement.

37. Defendants' continued infringement at least after such notice is willful and deliberate, entitling Plaintiff to increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## **DEMAND FOR JURY TRIAL**

38. Plaintiff demands trial by jury on all issues.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff WAG ACQUISITION, L.L.C. requests an entry of judgment in its favor and against Defendants as follows:

a) Declaration that Defendants have each infringed United States Patent Nos. 8,122,141 and 8,327,011;

b) Declaration that each of Defendants' infringement has been willful, and awarding enhanced damages and fees as a result of that willfulness under 35 U.S.C. § 284, jointly and severally against the Defendants;

c) Permanently enjoining Defendants, their officers, directors, employees, agents, and all those in concert and participation with them from continued infringement of infringed United States Patent Nos. 8,122,141 and 8,327,011;

d) Awarding the past and future damages arising out of Defendants' infringement of United States Patent Nos. 8,122,141 and 8,327,011 to Plaintiff, together with prejudgment and post-judgment interest, in an amount according to proof, jointly and severally against the Defendants;

e) Awarding attorneys' fees, costs, or other damages pursuant to 35 U.S.C. §§ 284 or 285 or as otherwise permitted by law, jointly and severally against the Defendants; and

f) For such other costs and further relief as the Court may deem just and proper.

Dated:   April 11, 2014

                                      RONALD ABRAMSON
                                      DAVID G. LISTON
                                      LEWIS BAACH PLLC
                                      The Chrysler Building
                                      405 Lexington Avenue
                                      New York, NY 10174


                                      By: s/ Ronald Abramson
                                             Ronald Abramson
                                      Tel: (212) 822-0163


                                      By: s/ David G. Liston
                                             David G. Liston
                                      Tel: (212) 822-0160

                                      *Attorneys for Plaintiff*