<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| WAG ACQUISTION, LLC, | |
| Plaintiff, | Civil Action No. 14-2340 (ES) (JAD) |
| v. | OPINION & ORDER |
| MULTI-MEDIA, LLC, et al., | |
| Defendants. | |

| | |
|---|---|
| WAG ACQUISTION, LLC, | |
| Plaintiff, | Civil Action No. 14-1661 (ES) (JAD) |
| v. | OPINION & ORDER |
| SOBONITO INVESTMENTS, LTD., et al., | |
| Defendants. | |

| | |
|---|---|
| WAG ACQUISTION, LLC, | |
| Plaintiff, | Civil Action No. 14-2345 (ES) (JAD) |
| v. | OPINION & ORDER |
| DATA CONVERSIONS, INC., et al., | |
| Defendants. | |

**WAG ACQUISTION, LLC,**

        **Plaintiff,**

        **v.**

**FLYING CROCODILE, INC., et al.,**

        **Defendants.**

**Civil Action No. 14-2674 (ES) (JAD)**

**OPINION & ORDER**

---

**WAG ACQUISTION, LLC,**

        **Plaintiff,**

        **v.**

**GATTYÁN GROUP S.a r.l., et al.,**

        **Defendants.**

**Civil Action No. 14-2832 (ES) (JAD)**

**OPINION & ORDER**

---

**WAG ACQUISTION, LLC,**

        **Plaintiff,**

        **v.**

**FRIENDFINDER NETWORKS, INC., et al.,**

        **Defendants.**

**Civil Action No. 14-3456 (ES) (JAD)**

**OPINION & ORDER**

---

**WAG ACQUISTION, LLC,**

        **Plaintiff,**

        **v.**

**VUBEOLOGY, INC., et al.,**

        **Defendants.**

**Civil Action No. 14-4531 (ES) (JAD)**

**OPINION & ORDER**

| | |
|---|---|
| **WAG ACQUISTION, LLC,** | |
| **Plaintiff,** | **Civil Action No. 15-3581 (ES) (JAD)** |
| **v.** | **OPINION & ORDER** |
| **WEBPOWER, INC., et al.,** | |
| **Defendants.** | |

**SALAS, DISTRICT JUDGE**

Before the Court are motions to dismiss in eight patent infringement actions filed by Plaintiff WAG Acquisition, LLC ("WAG"). Seven of these cases were consolidated into Civil Action No. 14-2340 for purposes of discovery on October 6, 2014.[1] (D.E. No. 45, Consolidation Order).[2] In addition to the consolidated cases, WAG filed a Complaint involving the patents-in-suit against WebPower, Inc. ("WebPower") on May 27, 2015. (Civil Action No. 15-3581, D.E. No. 1, WebPower Complaint).

Defendants in the seven consolidated cases have jointly moved to dismiss Plaintiff's Complaints. (D.E. No. 48). WebPower moved separately to dismiss in its action, (Civil Action No. 15-3581, D.E. No. 9), and the parties have requested that the Court consider WebPower's

---

[1] *WAG Acquisition, LLC v. Sobonito Investments, Ltd., et al.*, Civil Action No. 14-1661 ("*Sobonito*"); *WAG Acquisition, LLC v. Multi Media LLC, et al.*, Civil Action No. 14-2340 ("*Multi Media*"); *WAG Acquisition, LLC v. Data Conversions, Inc. et al.*, Civil Action No. 14-2345 ("*Data Conversions*"); *WAG Acquisition, LLC v. Flying Crocodile, Inc., et al.*, Civil Action No. 14-2674 ("*Flying Crocodile*"); *WAG Acquisition, LLC v. Gattyan Group S.a.r.l., et al.*, Civil Action No. 14-2832 ("*Gattyan*"); *WAG Acquisition LLC v. FriendFinder Networks Inc., et al.*, Civil Action No. 14-3456 ("*FriendFinder*"); and *WAG Acquisition, LLC v. Vubeology, Inc., et al.*, Civil Action No. 14-4531 ("*Vubeology*"). There was originally an eighth consolidated case, *WAG Acquisition, LLC v. MFCXY, Inc., et al.* ("*MFCXY*"), but it was voluntarily dismissed on May 8, 2015. (*See* Civil Action No. 14-3196, D.E. No. 48).

[2] Unless otherwise specified, docket entry numbers refer to the consolidated action, Civil Action No. 14-2340.

motion to dismiss in conjunction with the consolidated motion.  (Civil Action No. 15-3581, D.E. No. 13, June 29, 2015 Letter).

Defendants argue that the Court should dismiss WAG's Complaints because the claims of the patents-in-suit are invalid and/or unenforceable and because WAG has failed to sufficiently allege direct infringement, induced infringement, contributory infringement, and willful infringement.  Defendant Coolvision in the *Sobonito* matter also moves to dismiss for lack of personal jurisdiction.  The Court has considered the parties submissions in connection with their motions, as well as the oral arguments presented to the Court on July 29, 2015.  For the reasons below, the Court denies Defendants' motions to dismiss and orders limited discovery regarding the Court's personal jurisdiction over Defendant Coolvision.

## I.    FACTUAL BACKGROUND

WAG is a "New Jersey business that provides Internet streaming services to proprietors of traditional radio stations—retransmitting ("streaming") the radio station's live programming over the Internet."  (D.E. No. 49, Plaintiff's Brief in Opposition to Defendants' Joint Motion to Dismiss ("Pl. Opp. Br.") at 2).  Defendants "primarily operate paid live 'web cam' sites on the Internet." (*Id.* at 3).

WAG contends that, during the course of its business, it developed patents to improve the experience of streaming over the Internet.  (*Id.* at 2).  WAG has asserted four of these patents in this litigation:  U.S. Patent No. 8,122,141 ("the '141 patent"), U.S. Patent No. 8,327,011 ("the '011 patent"), U.S. Patent No. 8,185,611 ("the '611 patent"), and U.S. Patent No. 8,364,839 ("the '839 patent").[3]  WAG currently practices the '611 and '839 patents.  (*Id.* at 3).

---

[3] WAG has asserted the '141 and '011 patents against all Defendants.  It has asserted the '611 patent and '839 patent only in the *Sonbonito*, *Flying Crocodile*, *Gattyan*, *FriendFinder*, and *WebPower* cases.

According to WAG, its patents "provide two separate and distinct types of solutions to the problem of reliable and timely Internet media transport."  (*Id.* at 5).  The '839 and '611 patents are directed to a "buffering" solution, which employs a user buffer and server buffer, and in which the control of data flow for streaming is mediated by the server.  (*Id.*).  The '141 and '011 patents provide a "pull implementation" solution "in which the server regulates the flow of data based on receiving requests from the client."  (*Id.*).  WAG argues that the technology that "Defendants use to stream their video is WAG's technology, covered by the patents-in-suit."  (*Id.* at 4).

## II.    LEGAL STANDARD

For a complaint to survive dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).

In evaluating the sufficiency of a complaint, a court must "accept all well-pleaded allegations in the complaint as true and . . . draw all reasonable inferences in favor of the non-moving party."  *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

### III.    DISCUSSION

#### a.  Unenforceability of '141 Patent Claims

Defendants argue that claims 1-18 and 23-28 of the '141 patent are unenforceable as a matter of law because they erroneously include the phrase "such as the Internet" even though that phrase was deleted as part of an Examiner's Amendment during the patent's prosecution.  (D.E. No. 48, Joint Motion to Dismiss Plaintiff's Complaints ("Def. Mov. Br.") at 6-8).  Specifically, Defendants argue that the "Federal Circuit's *Overstock* decision explains that claims in an issued patent that are not the allowed claims—*e.g.*, do not reflect the claim language allowed by the PTO—are not enforceable as a matter of law." (*Id.* at 8 (citing *H-W Tech. LC v. Overstock.com, Inc.*, 758 F.3d 1329, 1335 (Fed. Cir. 2014))).  They argue that, to decide this issue, the Court must consider the following inquiries:  (1) Did the '141 patent issue with erroneous claims?  (2) Does the Court have the authority to correct the errors in such claims?  (3) Can WAG assert the claims prior to correction?  (D.E. No. 50, Joint Reply Brief in Support of Motion to Dismiss Plaintiff's Complaints ("Def. Rep. Br.") at 1).  Defendants make clear that they are not asking the Court to analyze the validity of the claims as asserted—but rather to find that WAG cannot even assert the claims to begin with.  (*Id.*).  The Court will consider each question in turn.

First, there is no dispute that the '141 patent issued with claim language that was deleted during an Examiner's Amendment.  On September 29, 2011, the Patent Examiner conducted a telephone interview in which he "informed applicant's representative of the potential 112 issues in the independent claims and suggested an examiner's amendment to address the issues. Applicant's attorney agreed to allow the examiner to amend claims 1, 10, and 24 by removing the phrase 'such as the internet.'" (D.E. No. 48-9, 9/29/2011 Examiner-Initiated Interview Summary). Accordingly, an Examiner's Amendment issued on the same date deleting the phrase "such as the

6

Internet" from the agreed-upon claims.  (D.E. No. 48-9, 9/29/2011 Examiner's Amendment).

Despite the Examiner's Amendment, the '141 patent issued with the phrase "such as the Internet"

in claims 1, 10, and 24.  ('141 patent at 13:24, 13:64, 15:9).  Though WAG stated at oral argument

that the inclusion of the phrase is not technically "erroneous" because it is accurate and appears in

other patents, it does not dispute that the '141 patent issued with language different from what was

agreed to during prosecution.  (7/29/2015 Oral Argument Transcript ("Tr.") at 48:21-49:7; 51:13-

15).  Thus, the Court is satisfied that the inclusion of the phrase "such as the Internet" in claims 1,

10, and 24 of the '141 patent constitutes an error.

 Second, accepting that there is an error, there is also no dispute that the Court does not have

authority to correct the claims.  The Federal Circuit has held that "the district court can correct an

error only if the error is evident from the face of the patent."  *Grp. One, Ltd. v. Hallmark Cards,*

*Inc.*, 407 F.3d 1297, 1303 (Fed. Cir. 2005) (citing *Novo Indus., L.P. v. Micro Molds Corp.*, 350

F.3d 1348, 1357 (Fed. Cir. 2003)).  If, however, "a reader of the patent at issue . . . could not

ascertain the error from the face of the patent," then the district court is without authority to correct

it.  *Id.*  Here, the alleged error is not evident from the face of the patent.  A reader of the '141 patent

would not be able to discern that the phrase "such as the Internet" should not be included in certain

claims.  The claim language reads coherently as printed.  Accordingly, the Court is without

authority to make the correction.

 The heart of the dispute, therefore, is whether WAG may assert the '141 patent claims prior

to correction.  Defendants argue that WAG may not assert the uncorrected claims because "claims

in an issued patent that are not the allowed claims—*e.g.*, do not reflect the claim language as

allowed by the PTO—are not enforceable as a matter of law."  (Def. Mov. Br. at 8).  Defendants

rely on *H-W Tech., L.C. v. Overstock.com, Inc.*, 758 F.3d 1329, 1335 (Fed. Cir. 2014), which states

that when "a claim issues that omits a material limitation, and such omission is not evident on the face of the patent, the patentee cannot assert that claim until it has been corrected by the PTO." 758 F.3d at 1335.  According to Defendants, WAG is therefore required to obtain a PTO correction of the erroneous '141 claims pursuant to 35 U.S.C. § 254 before asserting them in litigation.   (Tr. at 47:1-4).  In response, WAG argues that *H-W* only applies when a claim is erroneous because it *omits a material limitation*.  (Pl. Opp. Br. at 11).  WAG argues that *H-W* does not bar the assertion of claims like those in the '141 patent because (1) the error is not an omission; and (2) the error is immaterial.  (*Id.* at 10-14).

The Court agrees with Plaintiff that *H-W* does not bar the assertion of the disputed claims in the '141 patent.  In *H-W*, the claim at issue was "[a] method for performing contextual searches on an Internet Phone (IP) phone comprising the following steps . . . ."  *H-W*, 758 F.3d  at 3333.  The claim approved by the PTO included the step "wherein said user completes a transaction with at least one of said merchants listed without the need to generate a voice call," but the patent issued without that limitation.  *Id.*  The Federal Circuit agreed that the district court could not correct the claim, and held that the claim could not be asserted uncorrected because it "omits a material limitation, and such omission is not evident on the face of the patent."  The Federal Circuit reasoned that permitting the patentee to assert the claim "would be inequitable and undermine the notice function of patents."  *Id.* at 1335.

Here, by contrast, there was no omission of a material limitation.  In describing his basis for deleting the phrase, the Patent Examiner states that he "[i]nformed applicant's representative of the potential 112 issues in the independent claims and suggested an examiner's amendment to address the issues.  Applicant's attorney agreed to allow the examiner to amend claims 1, 10 and 24 by removing the phrase 'such as the internet.'"  (D.E. No. 48-9, 9/29/2011 Examiner's

Amendment).  The Patent Examiner did not suggest—and neither party has asserted—that the phrase "such as the Internet" alters the scope of the claims.  As WAG points out, the phrase "such as the Internet" "only serves to qualify, *i.e.*, limit the scope of, the phrase that it modifies ('data communications medium')."  (Pl. Opp. Br. at 14).  This error is therefore distinguishable from the error in *H-W*, where the error broadened the scope of the patent claim.

Defendants have cited no case suggesting that *any* claim with an uncorrected error is unenforceable as a matter of law.  In fact, the cases that Defendants rely on are inapposite, and they reveal that courts have not held patent claims unenforceable simply because they contain uncorrected errors.  For example, in *Group One*, as here, the plaintiff did not seek a certificate of correction to address an error that was "correctable by the PTO" under § 254.  407 F.3d at 1302.  The Federal Circuit upheld the district court's determination that (1) it was without authority to make the correction, and (2) the patent was invalid because "the missing language [was] essential to the validity of [the claim], and Group One has made no claim that the omitted language is not essential to validity."  *Id.* at 1303.  Notably, the Federal Circuit did not hold that the uncorrected claim was unenforceable as a matter of law; it merely held that the asserted, uncorrected claim was invalid on the merits.  *Id.*  Similarly, in *Novo Industries*, the Federal Circuit upheld the District Court's decision not to correct an error that added a full claim element, and determined that the uncorrected claim was "invalid for indefiniteness in its present form."  350 F.3d at 1356.  Again, the Federal Circuit's holding was based on invalidity.  *Id.*  There is nothing to suggest that the plaintiff was barred from asserting the claims, or that the error rendered the uncorrected claims unenforceable as a matter of law.  *Id.*

In this case, Defendants have explicitly stated that they are not arguing that the inclusion of the phrase "such as the Internet" renders the '141 claims invalid as indefinite or otherwise.  (Def.

Rep. Br. at 1).  Instead, they argue that it is strictly unenforceable as a matter of law.  (Def. Mov.

Br. at 8).  Because the Court does not agree that the inclusion of the phrase "such as the Internet"

renders the '141 claims unenforceable as a matter of law, Defendants' motion to dismiss these

claims is denied.

### b.  § 101 Subject Matter

Next, Defendants argue that the patents should be dismissed because they are directed to

ineligible subject matter pursuant to 35 U.S.C. § 101.  Section 101 of the Patent Act defines the

scope of eligible subject matter as "any new and useful process, machine, manufacture, or

composition of matter, or any new and useful improvement thereof."  35 U.S.C. § 101.  However,

the Supreme Court has "long held that this provision contains an important implicit exception:

Laws of nature, natural phenomena, and abstract ideas are not patentable."  *Alice Corp. Pty. Ltd.

v. CLS Bank Int'l*, 134 S. Ct. 2347, 2354 (2014) (quoting *Assoc. for Molecular Pathology v. Myriad

Genetics, Inc.*, 133 S. Ct. 2107, 2116 (2013)).  Defendants argue that the patents cover the "abstract

idea" of "maintaining streaming media data over the Internet."  (WebPower Mov. Br. at 6).  WAG

argues that it is premature for the Court to determine § 101 eligibility at this stage of the litigation,

prior to claim construction.  (Pl. Opp. Br. at 21).  Alternatively, it argues that the patents are not

invalid under § 101.  (*Id.* at 22-43).

The Supreme Court has set forth a two-part framework for distinguishing patent-eligible

and patent-ineligible subject matter.  *Alice*, 134 S. Ct. at 2355.  First, the Court must "determine

whether the claims at issue are directed to one of those patent-ineligible concepts."  *Id.* (citing

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1296-97 (2012)).  If yes,

the court must then "consider the elements of each claim both individually and as an 'ordered

combination' to determine whether the additional steps 'transform the nature of the claim' into a

patent-eligible application." *Id*. (citing *Mayo*, 132 S. Ct. at 1298, 1297).  Step two of the analysis is known as search for the "inventive concept," which is "an element or combination of elements that is sufficient 'to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself." *Id*. (citing *Mayo*, 132 S. Ct. at 1294).

       The Court recognizes that "claim construction is not an inviolable prerequisite to a validity determination under 101." *Content Extraction and Transmission LLC v. Wells Fargo Bank*, 776 F.3d 1343, 1349 (Fed. Cir. 2014).  Nevertheless, the Federal Circuit has instructed that "it will ordinarily be desirable—and often necessary—to resolve claim construction disputes prior to a § 101 analysis, for the determination of patent eligibility requires a full understanding of the basic character of the claimed subject matter." *BanCorp Servs., LLC v. Sun Life Assurance Co. of Canada*, 687 F.3d 1266, 1273-74 (Fed. Cir. 2012).  Indeed, "[i]f the Court is going to invalidate [the patent-in-suit] on subject matter eligibility grounds before claim construction, then Defendants must establish that the only plausible construction [i]s one that . . . renders the subject matter ineligible (with no factual inquiries)." *Data Distribution Technologies, LLC v. Brer Affiliates, Inc.*, No. 12-4878, 2014 WL 4162765, at *6 (D.N.J. Aug. 19, 2014).  Accordingly, "it will be rare that a patent infringement suit can be dismissed at the pleading stage for lack of patentable subject matter." *Ultramercial, Inc. v. Hulu, LLC*, 722 F.3d 1335, 1338 (Fed. Cir. 2013) (*cert. granted, judgment vacated sub nom. WildTangent, Inc. v. Ultramerical, LLC*, 134 S. Ct. 2870 (2014)).

       Defendants argue that the Court can—and should—address § 101 eligibility at this stage, and they direct the Court to several cases taking that approach.  (Def. Mov. Br. at 11-12 (citing, *inter alia*, *Content Extraction & Transmission LLC v. Wells Fargo Bank*, 2013 WL 3964909 (D.N.J. Jul. 31, 2013); *Glory Licensing LLC v. Toys R US, Inc.*, 2011 U.S. Dist. LEXIS 51888

(D.N.J. May 16, 2011)).[4]   WAG contends that the Court should defer ruling on § 101 eligibility until after claim construction, and directs the Court to cases that in which a § 101 ruling was "deferred in order to further develop the record."  (D.E. No. 16, Plaintiff's Brief in Opposition to Defendant WebPower Inc.'s Motion to Dismiss ("WebPower Opp. Br.") at 34-35 n.8 (collecting cases)).  There is no dispute that courts have taken both approaches.

The Court agrees with WAG that claim construction is necessary in this case before it can determine whether WAG's patents are invalid under § 101.  It is clear to the Court from the parties' submissions and oral argument that the parties vigorously dispute the basic character and meaning of the claims.  Indeed, WAG has stated that "the parties disagree on key areas of interpretation, including the fundamental question of what WAG's patents are about."  (Pl. Opp. Br. at 22). Despite this, the parties have not set forth stipulated representative claims or proposed constructions for the Court to review.  As such, the Court cannot "fairly apply *Alice*, particularly at step two, by attempting to conjure up all plausible claim constructions at this pleadings stage in the absence of stipulated constructions or at least Plaintiff's proposed constructions of its own patent." *See Data Distribution*, 2014 WL 4162765, at *11.  Because resolving the parties' disputes about the basic character and meaning of the claims requires claim construction, Defendants' motion to dismiss under § 101 is denied. *See Nomadix, Inc. v. Hospitality Core Servs. LLC*, No. 14-08256, 2015 WL 1525537, at *2 (C.D. Cal. Apr. 3, 2015) (denying § 101 argument on motion

---

[4] Though not raised in their moving brief, Defendants also relied heavily on *Wireless Media Innovations, LLC v. Maher Terminals, LLC*, No. 14-7004, 2015 WL 1810378 (D.N.J. Apr. 20, 2015), in the WebPower brief and at oral argument.  (*See* WebPower Mov. Br. at 4-5; Tr. at 67:3-68:11; 86:8-15).  In *Wireless Media*, the court determined that patents were directed to the abstract idea of "monitoring locations, movement, and load status of shipping containers within a container-receiving yard, and storing, reporting and communicating this information in various forms through generic computer functions." *Wireless Media Innovations*, 2015 WL 1810378, at *8.  Significantly, however, it first determined that "even if the Court construes all claim terms in a manner most favorable to Plaintiff, it would still find that none of the claims survive § 101." *Id.* at *5.  That is not the case here.

to dismiss because "[a]though the [c]ourt has the patents in question before it right now . . . the exact functioning of the patented systems has not yet been fully briefed."); *StoneEagle Servs., Inc. v. Pay-Plus Solutions, Inc.*, No. 13-2240, 2015 WL 518852, at *4 (M.D. Fl. Feb. 9, 2015) (denying motion to dismiss on § 101 grounds as "premature" where "the parties dispute the basic character of the claimed subject matter").

### c. Direct Infringement

Defendants next argue that WAG's Complaints must be dismissed for failure to adequately plead direct infringement. (Def. Mov. Br. at 23). Pursuant to 35 U.S.C. § 271(a), "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent." 35 U.S.C. § 271(a).

Defendants first argue that WAG's direct infringement allegations fail because they refer generally to "Defendants." (Def. Mov. Br. at 23-35). Specifically, they argue that WAG "must separately plead direct infringement as to each separate defendant." (*Id.* at 24). They rely on *Richmond v. Lumisol Electrical Ltd.*, No. 13-1944, 2014 WL 1405159, at *3 (D.N.J. Apr. 10, 2014), in which the court held that the plaintiff's complaint was deficient and that "[p]laintiff's allegations should be broken into separate counts linking each individual Defendant with a violation of a single patent." 2014 WL 1405159, at *3. However, a closer review of *Richmond* reveals that the complaint at issue in that case is easily distinguishable from WAG's Complaints here. The court in *Richmond* noted that the complaint was a "shot-gun, one-count Complaint" in which the plaintiff "lumps his direct infringement and indirect infringement claims into one lengthy and rambling count." *Id.* The court's instructions were directed to the plaintiff in that case "[i]f [p]laintiff seeks to amend his Complaint." *Id.* The court did not state that the instruction

reflects a pleading requirement applicable to all patent cases.  In fact, it specifically noted that it "writes only for the parties." *Id.* at *1.

Here, by contrast, WAG breaks out its claims by patent and infringement type, and it simply alleges that "Defendants" are responsible in each count.  (*See, e.g.*, Sobonito Compl. ¶¶ 61-76 (alleging direct infringement of '141 patent claims against "Defendants")).  Courts have held that complaints with similar allegations are sufficient to withstand a motion to dismiss.  *See, e.g.*, *WesternGeco LLC v. Ion Geophysical Corp.*, 776 F. Supp. 2d 342, 363 (S.D. Tex. 2011) ("The Federal Circuit has approved the use of a collective term within a complaint to refer to acts of all defendants without distinction among the exact infringing acts performed by each one" (citing *McZeal v. Sprint Nextel Corp.*, 501 F. 3d 1354, 1357 (Fed. Cir. 2007)).  The Court is satisfied that WAG's reference to "Defendants" in WAG's Complaints means each individual Defendant, and that the Complaint is sufficient to put Defendants on notice of the alleged infringement.

Next, Defendants argue that WAG's Complaints must be dismissed because WAG does not specifically show how Defendants make or use the claimed inventions.  (Def. Mov. Br. at 27-44).  Specifically, Defendants contend that end-users—not Defendants—"use" the patented inventions because "use" occurs "where control of the system is exercised and beneficial use of the system obtained."  (*Id.* at 30 (citing *NTP, Inc. v. Research In Motion, Ltd.*, 418 F.3d 1282 (Fed. Cir. 2005)).

The Court declines to dismiss Plaintiff's direct infringement claims on this ground.  As recently as July 21, 2015, the Federal Circuit has held that "[a] motion to dismiss a claim of direct infringement . . . will not be granted if the complaint follows Form 18."  *Addiction and Detoxification Inst. LLC v. Carpenter*, 2015 WL 4430128, at *2 (Fed. Cir. July 21, 2015) (citing *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1331 (Fed. Cir.

2012)).[5]  "Form 18 and the Federal Rules of Civil Procedure do not require a plaintiff to plead

facts establishing that each element of an asserted claim is met" or "even identify which claims it

asserts are being infringed."  *In re Bill of Lading*, 681 F.3d at 1331 (internal citation omitted).

Rather, a complaint complies with Form 18 if it includes "(1) an allegation of jurisdiction; (2) a

statement that the plaintiff owns the patent; (3) a statement that defendant has been infringing the

patent 'by making, selling, and using [the device] embodying the patent'; (4) a statement that the

plaintiff has given the defendant notice of its infringement; and (5) a demand for an injunction and

damages."  *K–Tech Telecomm'n, Inc. v. Time Warner Cable, Inc.*, 714 F.3d 1277, 1283 (Fed. Cir.

2013) (internal citation omitted).  In addition, "to the extent any conflict exists between *Twombly*

(and its progeny) and the Forms regarding pleadings requirements, the Forms control."  *Id.*

        Here, WAG's complaints not only satisfy the basic requirements of Form 18, but also

heightened the pleading standard of *Twombly*.  With respect to Form 18, WAG's Complaints each

allege subject matter and personal jurisdiction.  (*See, e.g.*, Sobonito Compl. ¶¶ 6-7).  WAG's

complaints further allege that WAG owns the patents-in-suit.  (*See, e.g.*, *id.* ¶¶ 13).  They allege

that Defendants have been infringing the patents-in-suit "by making, selling, and using [the device]

embodying the patent."  (*See, e.g.*, *id.* ¶¶ 63, 98-99, 124, 129).  They allege that Plaintiff has given

Defendants notice of its infringement.  (*See, e.g.*, *id.* ¶¶ 59-60).  Finally, they demand an injunction

and damages.  (*See, e.g.*, *id.* at 40, Prayer for Relief).

        Moreover, WAG's complaints meet the standard of *Twombly* and *Iqbal* because they

"contain sufficient factual allegations such that a reasonable court could, assuming the allegations

---

[5] As Defendants pointed out at oral argument, the Judicial Conference of the United States recently
recommended the elimination of the Model Forms in the Federal Rules of Civil Procedure.  However, the
recent use of Form 18's pleading standard by the Federal Circuit suggests its continued relevancy.  *See
Addiction and Detoxification*, 2015 WL 4430128, at *2.  In any event, the Court's determination that
WAG's direct infringement claims are sufficient is based both on its compliance with Form 18, as well as
its compliance with the pleading standards of *Iqbal* and *Twombly*.

were true, conclude that the defendant infringed." *See Addiction and Detoxification*, 2015 WL 4430128, at *2.  In each of its Complaints, WAG includes detailed allegations of why Defendants infringe specific claims in each of the patents asserted.  (*See, e.g.*, Sobonito Compl. ¶¶ 66-76; 99-102; 124-25; 129-30).  For example, in its Sobonito Complaint, WAG alleges that Defendants infringe claims 1-8 and 28 of the '141 patent, which are directed to providing a server and software to run media players.  (*Id.* ¶ 67).  WAG includes, *inter alia*, the following specific allegations: "Defendants provide servers that meet the first set of requirements recited in these claims.  Through such servers, Defendants direct and control users' Players (as further alleged below) to provide Player Software in accordance with the second set of requirements recited in these claims.  By performing these steps (which together comprise all of the steps of the claims), Defendants thereby directly infringe claims 1-8 and 28 of the '141 patent."  (*Id.*).  This type of detailed pleading is found throughout WAG's Complaints, and it is more than sufficient for purposes of pleading direct infringement.  *See, e.g.*, *Bel Fuse Inc. v. Molex Inc.*, 27 F. Supp. 3d 557, 562 (D.N.J. 2014); *Demodulation, Inc. v. Applied DNA Sciences, Inc.*, No. 11-296, 2012 WL 6204172, at *12 (D.N.J. Dec. 12, 2012).  Though Defendants argue that end-users "use" the patented system and not Defendants, WAG's Complaints plausibly allege otherwise.  Accordingly, the Court denies Defendants' motions to dismiss WAG's direct infringement claims.

### d.  Inducement

Defendants' argue that WAG's claims for inducement must be dismissed because WAG does not sufficiently allege knowledge or specific intent.  (Def. Mov. Br. at 44).  Under 35 U.S.C. § 271(b), "[w]hoever actively induces infringement of a patent shall be liable as an infringer."  35 U.S.C. § 271(b).  The Supreme Court has held that "knowledge is needed for induced infringement under § 271(b)."  *Global-Tech Appliances*, *Inc. v. SEB S.A.*, 131 S. Ct. 2060, 2068 (2011).

Recently, the Supreme Court clarified that the "knowledge" required for inducement includes both knowledge of the patent *and* knowledge of infringement. *Commil USA, LLC v. Cisco Sys., Inc.*, 135 S. Ct. 1920, 1926 (2015). Thus, to "sufficiently plead induced infringement, [the Complaints] must contain facts plausibly showing that [Defendants] specifically intended their customers to infringe the . . . patent[s] and knew that the customer's acts constituted infringement." *In re Bill of Lading*, 681 F.3d at 1339.[6] "This does not mean, however, that [WAG] must prove its case at the pleading stage." *Id.*

Defendants argue that WAG has not adequately alleged Defendants' specific intent to encourage others to infringe, nor its knowledge that users' actions constituted infringement. (Def. Mov. Br. at 51). The Court disagrees. The induced infringement counts involve patent claims to a users' player and player software. (*See, e.g.*, Sobonito Compl. ¶¶ 77-86, 105-113). WAG alleges that Defendants know that users employ the infringing media players and player software, and that they *intend* this consequence or are willfully blind to it. (*See, e.g.*, Gattyan Compl. ¶ 77; *see also* Sobonito Compl. ¶ 85 ("Defendants have engaged in such inducement with knowledge of the '141 patent; with knowledge that users' Players use Player Software meeting the limitations of [the claims]; with knowledge that the users directly infringe [the claims] when they use Player

---

[6] WAG alleges that Defendants had pre-suit knowledge of infringement in two of the cases: *WebPower* and *Vubeology*. For the remainder of cases, WAG relies on post-suit knowledge. In their brief, Defendants argue that post-suit knowledge is not sufficient for purposes of alleging inducement, however they did not raise this argument at oral argument before the Court, and district courts in this Circuit have routinely determined that post-suit knowledge is sufficient. *See, e.g.*, *Softview LLC v. Apple Inc.*, No. 10-389, 2012 WL 3061027, at *7 (D. Del. July 6, 2013) ("the filing of a complaint is sufficient to provide knowledge of the patents-in-suit for purposes of stating a claim for indirect infringement occurring after the filing date."); *Walker Digital v. Facebook, Inc.*, 852 F. Supp. 2d 559, 565-566 (D. Del. 2012) (same). The Court finds these cases persuasive. As the court in *Softview* held, "an accused infringer is on notice of the patents(s)-in-suit once an initial pleading identifies the patents-in-suit, and a patentee that successfully proves the remaining legal elements of indirect infringement is entitled to recover for any post-filing indirect infringement of those patents." *Softview*, 2012 WL 3061027, at *7. Accordingly, the Court determines that WAG's allegations of pre-suit and post-suit knowledge could both be sufficient and focuses on Defendants' arguments that such knowledge is not pled with adequate specificity.

Software; with knowledge of how Defendants' conduct actively induces users to infringe the '141 patent by Player Software; and with the specific intent to cause such infringement, knowing that the users' acts constitute direct infringement of the '141 patent.")).  These facts plausibly give rise to the conclusion that Defendants induced infringement of WAG's patents.  *See Walker Digital*, 852 F. Supp. 2d at 556.  As a result, the Court denies Defendants' motions to dismiss WAG's claims for inducement.

### e.  Contributory infringement

Defendants argue that WAG's contributory infringement claims should be dismissed because WAG has not alleged knowledge and because WAG has not sufficiently alleged that Defendants provided a component with substantial non-infringing use.  Under 35 U.S.C. § 271(c), [w]hoever offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer."  35 U.S.C. § 271(c).

As an initial matter, the Court concluded with respect to WAG's inducement claims that WAG had sufficiently alleged knowledge for the purposes of indirect infringement.  (*See, supra*, Section III.d).  That determination applies to WAG's claim for contributory infringement as well.  Thus, the Court only addresses Defendants' argument that WAG has not sufficiently alleged that Defendants provided a component with a substantial non-infringing use.

Defendants argue that WAG has not pled contributory infringement because, as a matter of law, the Downloaded Software that WAG alleges is a "component" of the claimed invention

cannot constitute a "component." (Def. Mov. Br. at 56). In support of this proposition, Defendants rely on *Microsoft Corp. v. AT&T Corp.*, 127 S. Ct. 1746 (2007), which held that software did not constitute a component under 35 U.S.C. 271(f) unless it was embodied in a tangible copy.[7]

WAG appears to agree with Defendants' characterization of *Microsoft*, and argues that "WAG's complaints allege that Defendants create such a copy by including this software along with their web pages, which creates a tangible copy when received by the user's player or browser." (Pl. Opp. Br. at 70). It alleges that "[p]roviding the software on the user's player or browser is sufficient under § 271(c)." (*Id.*). In reply, Defendants point out that WAG is only arguing that a tangible copy is created *when received* by the user's player or browser—but there is still no allegation that Defendants have offered for sale, sold, or imported a physical component.

The Court agrees with WAG that it has sufficiently pled contributory infringement under § 271(c). WAG specifically alleges that Defendants "have offered to sell or sold within the United States or imported into the United States the ImLive Downloaded Software" and that the "Downloaded Software constitutes a component of a patented machine, manufacture, combination or composition, or a material apparatus for use in practicing a patented process, constituting a material part of the invention." (*See, e.g.*, Sobonito Compl. ¶¶ 117-18). Defendants' argument that the Downloaded Software is not in a tangible form, (*see* Def. Rep. Br. at 22-23), requires the

---

[7] The Court notes that the *Microsoft* decision considered the meaning of the term "component" in the context of 35 U.S.C. § 271(f), which provides that "[w]hoever without authority supplies or causes to be supplied in or from the United States all or a substantial portion of the components of a patented invention, where such components are uncombined in whole or in part, in such manner as to actively induce the combination of such components outside of the United States in a manner that would infringe the patent if such combination occurred within the United States, shall be liable as an infringer." 35 U.S.C. § 271(f). At oral argument, WAG argued (and Defendants conceded) that Defendants had not directed the Court to any cases applying the *Microsoft* holding in the context of § 271(c). However, the Court does not need to reach whether *Microsoft*'s holding applies to § 271(c), as it determines that WAG's pleadings are sufficiently specific for purposes of a motion to dismiss.

Court to look outside the scope of the pleadings.   It would be overly stringent to require WAG to, at this stage, explain precisely how the Downloaded Software constitutes a component. Accordingly, WAG's contributory infringement claims are permitted to proceed.

### f.  Willfulness

Next, Defendants argue that WAG should not be permitted to assert claims of willful infringement because (1) it has not alleged any pre-filing willful activity and (2) cannot rely on post-filing activity because it did not seek a preliminary injunction.  (Def. Mov. Br. at 56-57). WAG does not dispute that it relies solely on post-filing conduct, but it asserts that the fact that it did not seek a preliminary injunction does not bar it from asserting willfulness claims.  (Pl. Opp. Br. at 72-73).

The parties' disagreement arises from their conflicting interpretations of *In re Seagate*, 497 F.3d 1360 (Fed. Cir. 2007).  Defendants argue that *Seagate* prohibits plaintiffs from alleging willful infringement based solely on post-filing conduct unless they also seek a preliminary injunction.  (Def. Mov. Br. at 57).  WAG argues that *Seagate* does not establish a *per se* rule, and it further argues that the fact that it did not move for a preliminary injunction does not make the allegation of willful infringement any less plausible in this case.  (Pl. Opp. Br. at 73).

District courts that have considered this issue have reached diverging conclusions.  Several courts have barred plaintiffs from asserting willfulness claims based on post-filing conduct absent a preliminary injunction.  *See, e.g.*, *McRo, Inc. v. Namco Bandai Games Am., Inc.*, 23 F. Supp. 3d 113, 1123-24 (C.D. Cal. July 11, 2013); *Execware, LLC v. Staples, Inc.*, No. 11-836, 2012 WL 6138340, at *6 (D. Del. Dec. 10, 2012).  Other courts have permitted such claims to proceed.  *See, e.g.*, *Englishtown, Inc. v. Rosetta Stone Inc.*, 962 F. Supp. 2d 355, 359 (D. Mass. 2013); *DataQuill Ltd. V. High Tech Computer Corp.* 887 F. Supp. 2d 999, 1015-16 (S.D. Cal. 2011).

The Court begins its analysis with the language of *In re Seagate*.  There, the Federal Circuit held that

> [A] willfulness claim asserted in the original complaint must necessarily be grounded exclusively in the accused infringer's pre-filing conduct.  By contrast, when an accused infringer's post-filing conduct is reckless, a patentee can move for a preliminary injunction, which generally provides an adequate remedy for combating post-filing willful infringement. . . . A patentee who does not attempt to stop an accused infringer's activities in this manner should not be allowed to accrue enhanced damages based solely on the infringer's post-filing conduct.

*In re Seagate*, 497 F.3d at 1374.  The Federal Circuit Court goes on to state, however, that "in some cases a patentee may be denied a preliminary injunction despite establishing a likelihood of success on the merits, such as when the remaining factors are considered and balanced.  In that event, whether a willfulness claim based on conduct occurring solely after litigation is sustainable will depend on the facts of each case."  *Id.*

Courts that have permitted willfulness claims to proceed absent a preliminary injunction have relied on the language in *Seagate* to recognize that "certain plaintiffs would not be eligible for preliminary injunctive relief, not for want of demonstrating a likelihood of success on the merits, but rather because they could not demonstrate that they would suffer irreparable harm absent injunctive relief."  *Englishtown*, 962 F. Supp. 2d 355 at 359.  For example, there are circumstances, such as those alleged by WAG, where because the parties are not competitors, the Plaintiff's injury is monetary.  *See id*; (*see also* Pl. Opp. Br. at 71).  In such cases, where injunctive relief is not appropriate, courts have held that it would make "little sense to implement a *per se* rule."  *See Affinity Labs of Tex., LLC v. Alpine Elecs. of Am., Inc.*, No. 08-171, 2009 WL 0901275, at *4 (E.D. Tex. Sept. 2, 2009).

The Court is persuaded by the logic of the cases holding that there is no *per se* bar to alleging post-filing willfulness without seeking a preliminary injunction.  Here, WAG has asserted that it does not compete with Defendants and that its damages are strictly monetary.  (Pl. Opp. Br. at 71).  It has further asserted that it could not meet the requirement of irreparable harm necessary to succeed on a preliminary injunction.  (*Id.*).  "The Court agrees that seeking preliminary injunctive relief would have been futile where there is no allegation of direct competition."  *Zond, LLC v. Renesas Elecs. Corp.*, No. 13-11625, 2014 WL 4161348, at *5 (D. Mass. Aug. 15, 2014).

At oral argument, Defendants pointed out that WAG seeks a permanent injunction in each of Complaints, and argued that this is inconsistent with WAG's statement that it could not have obtained a preliminary injunction.  (Tr. at 180:7-23).  This argument is premature.  Defendants may highlight WAG's inconsistency if and when its entitlement to a permanent injunction is at issue.  At this stage, the Court only needs to consider whether it would have been futile for WAG to seek a preliminary injunction.  Because the Court accepts WAG's contention that it would have been futile to seek a preliminary injunction because it could not prove irreparable harm, WAG's claims for willful infringement may proceed.

### g.  Personal Jurisdiction

Defendant Coolvision[8] argues that it should be dismissed as a Defendant in this action for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2).  (Def. Mov. Br. at 60).  To determine whether jurisdiction exists over an out-of-state Defendant, the Court must consider two inquiries.  *IMO Indus. Inc. v. Kiekert AG*, 155 F.3d 254, 259 (3d Cir. 1998). "First, the court must apply the relevant state long-arm statute to see if it permits the exercise of personal jurisdiction; then, the court must apply the precepts of the Due Process Clause of the Constitution."

---

[8] Coolvision is a Defendant in the *Sobonito* case, Civil Action No. 14-1661.

*Id.*  However, because New Jersey's long-arm statute is co-extensive with the limits of due process, "the two inquiries collapse into a single inquiry: whether jurisdiction comports with due process." *Id.*

The Court may exercise either general or specific jurisdiction over a defendant.  *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F.2d 434 (3d Cir. 1987).  It may exercise general personal jurisdiction over a defendant who exhibits "continuous and systematic" contacts with the forum state.  *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-416 (1984). It may exercise specific personal jurisdiction where "the plaintiff's cause of action is related to or arises out of the defendant's contacts with the forum" state.  *IMO*, 155 F.3d at 259 (citing *Helicopteros*, 466 U.S. at 408).  More specifically, a Court evaluating specific jurisdiction must consider whether (1) the defendant purposefully directed its activities at residents of the forum, (2) the claim arises out of or relates to those activities, and (3) the assertion of personal jurisdiction is reasonable and fair.  *Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1018 (Fed. Cir. 2009).  In addition, where, as here, "the parties have not conducted discovery, [the plaintiff] need[s] only to make a prima facie showing that [the defendant] is subject to personal jurisdiction." *Id.* at 1017.  "As such, the pleadings and affidavits are to be construed in the light most favorable to [the plaintiff]."  *Id.* (internal citation omitted).

WAG concedes that it is only arguing that the Court may exercise specific—and not general—jurisdiction over Defendant Coolvision.  (Pl. Opp. Br. at 77).  Coolvision argues that specific jurisdiction does not exist because Coolvision does not direct activities to New Jersey residents and WAG's claims do not arise out of Coolvision's activities.  (Def. Mov. Br. at 60-68). Coolvision primarily relies on a declaration submitted by Coolvision's Chief Executive Officer, Noam Fogel, (D.E. No. 48-3) to argue that "Coolvision simply performs some elementary tasks

for [www.imlive.com]," but does not "own any of the accused websites or equipment" or "perform any activities in New Jersey (or elsewhere) that give rise to WAG's infringement claim." (Def. Mov. Br. at 64). Coolvision argues that WAG is erroneous in asserting that Coolvision "owns and controls" imlive.com and its associated server infrastructure.

WAG argues that, even accepting Fogel's declaration as true, there are still uncontroverted allegations that demonstrate Coolvision's infringement-related activities. (Pl. Opp. Br. at 79-80). For example, WAG points to the fact that imlive.com is transmitted over an infringing server located in or around Newark, NJ, (Sobonito Compl. ¶ 36), that imlive.com has numerous performers in New Jersey, who perform online over Defendants' infringing services, from New Jersey, (*id*. ¶ 47), and that Defendants' highly interactive websites have a high volume of users in this district which provide Defendants with substantial revenues, (*id*. ¶ 50). WAG also references that Fogel's statement that Coolvision performs "maintenance," "technical support," "monitoring," and "technical administration duties" for imlive.com as further support for finding personal jurisdiction. (Pl. Opp. Br. at 80).

The Court determines that WAG is entitled to take jurisdictional discovery because it has presented "factual allegations that suggest 'with reasonable particularity' the possible existence of the requisite 'contacts between [the party] and the forum state." *Toys "R" Us v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003); *see also Autogenomics*, 556 F.3d 1012 at 1022. WAG has included numerous allegations that suggest that the Court has personal jurisdiction over Coolvision. Fogel's declaration controverts some, but not all, of WAG's allegations. Though the remaining allegations do not establish a prima facie case of personal jurisdiction, they do suggest with reasonable particularity that personal jurisdiction exists. As a result, the Court determines that limited jurisdictional discovery is proper in this case.

**IV.     CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss the Complaint, (D.E. No. 48), and WebPower's motion to dismiss the Complaint, (Civil Action No. 15-3581, D.E. No. 9), are both denied.

Accordingly, it is on this 10th day of September 2015 hereby

ORDERED that the Clerk of the Court shall terminate Defendants' motion to dismiss in each of the consolidated cases; and it is further

ORDERED that the Clerk of the Court shall terminate WebPower's motion to dismiss in Civil Action No. 15-3581, D.E. No. 9.

ORDERED that the parties shall engage in limited jurisdictional discovery regarding the Court's personal jurisdiction over Defendant Coolvision.

SO ORDERED.


*s/ Esther Salas*
**Esther Salas, U.S.D.J.**